OPINION OF THE COURT
John B. Riordan, J.
In this accounting proceeding of four testamentary trusts under the will of the decedent, Eleanor Levitt, motions have been made for partial summary judgment by the objectant and a cross motion for partial summary judgment by the petitioner.
After leaving all of her tangible personal property and her residence to her husband, Sol Levitt, the decedent divided her estate into marital and nonmarital shares. The marital deduction amount, limited to 50% of the net estate in 1974 (Weinstock and Neumann, Planning an Estate § 4.2 [4th ed]), the year of her death, was left outright to Sol and the nonmarital or residuary share was divided into three separate trusts, one for each of the couple’s three daughters. Initially, however, during his lifetime, Sol could receive both interest and principal distributions in the sole and absolute discretion of the “Disinterested Trustee.” Both Sol and a Seymour Karsh were initially appointed cotrustees; Seymour Karsh later resigned in 1979 and was replaced by Murray Spitzer as successor cotrustee. Murray Spitzer thereafter ceased to act in 1990 informing Sol of his resignation but without obtaining court approval. Sol continued to act alone as trustee from 1990 until his death in 2002 at the age of 93 years. His executrix, Josephine, his second wife of approximately 27 years, is the petitioner and has filed the accounting for the various trusts on behalf of her deceased husband as trustee.
From the trust’s inception in 1974, Sol received no distributions of either income or principal until 1993 when, at the age of 84, he began receiving monthly payments of income. Because Murray Spitzer had ceased to act, the distributions were made without the approval of a disinterested trustee. Following Sol’s death, Carol Factor, one of Sol’s three daughters and her husband, Bruce, were appointed successor trustees in 2003 upon Murray Spitzer’s court-approved resignation.
The objections filed by the successor trustees and the two other daughters seek return of all distributions received by Sol, a sum exceeding $1,122,000, alleging that EPTL 10-10.1 prohibits the payments made by Sol to himself while acting as sole trustee. During the period distributions were made to Sol, *373 EPTL 10-10.1 did, in fact, prohibit the exercise of a power by a beneficiary/trustee to pay to himself or herself income or principal unless the power was exercised by a cotrustee not so disqualified or in default thereof, by the Surrogate’s Court having jurisdiction of the estate of the donor of testamentary power.
The petitioner has cross-moved for partial summary judgment, seeking a dismissal of the objections with respect to the income distributions, ratification by the court of the income distributions and imposition of a constructive trust on proceeds received by the objectants from the trusts.
While primarily relying on the allegations that the payments are a clear violation of EPTL 10-10.1, the objectants also argue that the proof assembled by them demonstrates that the payments to Sol were made deceitfully and in bad faith in the face of explicit contrary advice received from his attorney and that the payments were unnecessary for his health, education, maintenance or support. In fact, the argument is that only need-based distributions were permissible.
The will, however, demonstrates an overriding concern by the decedent for the welfare of her husband, certainly beyond any need-based criteria. There are at least several clear manifestations of this deep concern. With regard to principal payments, they may be made “even though such payments and applications may result in the termination [of the Trusts].” Again, there shall be “no duty to inquire as to other property of my said husband, his income or circumstances, and the Trustees shall not be responsible or required to see to the use of any such payments.” And finally,
“the care and comfort of my said husband is my primary concern, and therefore, I direct the Disinterested Trustees to be extremely liberal in the exercise of the discretion conferred upon them hereunder, to give preference to the care and comfort of my said husband rather than to the conservation of principal for the benefit of other and/or subsequent income beneficiaries and/or remaindermen.”
In addition to spelling out in detail her deep concern for her husband’s welfare, she gave him a special power of appointment to appoint the remainders to anyone other than “my said husband, his creditors, his estate or creditors of his estate.”
It is apparent from the will that the decedent’s intention was clearly to give her husband as much beneficial interest as possible without causing the trusts to be included in his gross estate *374 for estate tax purposes upon his death. By giving the power to make distributions of income or principal to a disinterested trustee the decedent avoided giving her husband the power to consume or invade the trusts which would have required their inclusion in his gross estate for estate tax purposes (Internal Revenue Code [26 USC] § 2041). Indeed, she was careful to give him only a special power of appointment as distinguished from a general power of appointment which is defined as “power that is exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate” (Internal Revenue Code [26 USC] § 2041 [b] [1]) which would also have required the inclusion of the trusts in his estate for estate tax purposes.
EPTL 10-10.1 was originally derived from former Real Property Law § 141 which was enacted in 1945 and provided in part, that a trustee could not distribute trust principal to himself. Rather such distribution was to be made by the other trustees, or if none, by the court (L 1945, ch 843). The statute was revised and reenacted in 1965 as former Real Property Law § 159 upon recommendation of the Temporary Commission on Estates (4th Report of Temp St Commn on Estates, 1965 NY Legis Doc No. 19, at 118, 121). In 1966 the statute was recodified as EPTL 10-10.1.
Since 1965 the primary purpose of EPTL 10-10.1 has been to prevent a grantor of a trust from inadvertently causing the inclusion of the property subject to the power in the gross estate of the trustee for estate tax purposes under the general power of appointment provisions of Internal Revenue Code (26 USC) § 2041 (5-10 NY Civ Prac, EPTL 10-10.1 [2]; 2003 recommendation of Surrogate’s Court Advisory Committee). While the 1965 report of the Temporary Commission on Estates concluded it would not be wise to make the statute applicable only in instances where the instrument did not provide otherwise because it would be contrary to the then provisions of former Real Property Law § 141, the Legislature in the 2003 revision did just that by permitting a knowledgeable testator to provide otherwise and override the statute (5-10 NY Civ Prac, EPTL 10-10.1 [2]).
While the legislative history shows a marked tendency not to impose restrictions on the drafting of trust instruments, here the distributions of income would nevertheless technically violate the provisions of EPTL 10-10.1 (Matter of Seidman, 58 AD2d 72 [1977]), except for a consideration of the petitioner’s request that the distributions be ratified by the court, a request *375 that is strongly opposed by the objectants. A technical argument is made that the statute only permits the court to act where there is no cotrustee who could act and who is not disqualified. Since Murray Spitzer was not granted approval to resign by the court prior to 2003 and could have presumably still acted, it is argued that there was no vacancy in the office of cotrustee. The statute, however, refers to an anticipated exercise of the power by the court, not as presently requested, a ratification after the fact.
In Matter of Osborn (252 App Div 438 [1937]), a trust was established by a settlor with income to him for his life and then to his wife for life with remainder to his son. Withdrawals were made by the settlor which were totally unsupervised by a corporate cotrustee. The son predeceased his father and following the settlor’s death, the settlor’s widow complained of the withdrawals. The Appellate Division observed that:
“Obviously the trust granted very broad powers to the trustee. The life tenants, and particularly Mr. Osborn, who was evidently providing for his wife, . . . were entitled to something more than mere subsistence; and the whole trust estate might properly have been expended for their benefit so that they might live in a station comparable to that to which they were accustomed in so far as the funds available permitted.” {Id. at 443.)
In concluding the Court stated:
“Assuming that the trustee did unlawfully abandon its discretion in respect to expenditures and surrendered it to one of the life tenants, the principle of duty and obligation may become merely an abstract one if, in fact, the proper result was reached — that is, if the amount actually expended for the support and maintenance of the life beneficiaries was not excessive in view of the amount of the property and their ordinary standard of living, and if provision were made for the proper support of the surviving life tenant. The rights of the remaindermen were subordinate to the rights of the life tenants for their support and consisted only of the right to take whatever was left after the death of the life tenants in an estate properly administered according to the terms of the trust. In other words, provisions for the support of the life tenants might properly have exhausted the entire corpus or a *376 substantial part thereof.” (Id. at 445.)
The matter was remitted to the lower court “for further proof and consideration in the respects indicated.” (Id.)
Similarly, this court concludes it has the ability to review distributions made and complained of and “if the proper result was achieved” (Matter of Osborn, 252 App Div 438, 445 [1937]), to ratify the distributions. To the extent that petitioner requests partial summary judgment dismissing the objections relating to distributions, it is denied and a hearing will be necessary as required by the Osborn case.
In an apparent effort to circumscribe the extent of any ratification, the objectants quote from the Seidman case to the effect that “a trustee who is also a beneficiary and who is given a power or discretion to invade the trust principal for the accomplishment of the settlor’s purpose, has a fiduciary obligation to the remaindermen to confine his trustee’s demands within reasonable limits” (Matter of Seidman, 58 AD2d 72, 75 [1977]). However, the will in the Seidman case permitted principal invasions solely when “income [was] insufficient to maintain and support my wife” (id. at 73) and not as here where the standards are directed to be “extremely liberal.” In addition, other resources are expressly not to be considered, there is no obligation to see to the use of the property, and the care and comfort of her husband was the decedent’s primary concern. Finally, any concern for remaindermen is entirely secondary.
In contrast to the Seidman case, the will in Matter of Rachlin (133 NY2d 151, 152 [1954]) provides in part: “[A]nything herein contained to the contrary notwithstanding, my trustee may, at any time and from time to time, pay over to my wife so much or all of the principal of the trust for her benefit.” In defining the word “benefit” the Court held “the word ‘benefit’ is more comprehensive than the word ‘support’ and is ‘anything that works to the advantage or gain of the recipient’ ” (at 152). The will here similarly directs the application of both income and principal for the “benefit of my said husband” without restricting such benefits to merely support and maintenance.
As noted above, objectants also claim the distributions of income were made deceitfully and in bad faith and request summary judgment on that ground. However, they have failed to make a prima facie showing of entitlement to judgment as a matter of law on this issue nor have they tendered sufficient evidence to demonstrate the absence of any material issues of *377 fact. Accordingly, the motion on that ground is denied. Likewise, the petitioner has failed to demonstrate a prima facie showing of entitlement to judgment as a matter of law on the claim of a constructive trust which would require the daughters to return payments from the trusts and the cross motion to that extent is also denied.